UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MOHAMED SOLIMAN MAHMOUD SOLIMAN EMARA,<br><br>              Petitioner(s),<br><br>     v.<br><br>PAMELA BONDI, et al.,<br><br>              Respondent(s). | CASE NO. C26-0116-KKE<br><br>ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS |

Petitioner Mahomed Soliman Mahmoud Soliman Emara filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241. Dkt. No. 1. Petitioner fled Egypt in October 2024 because he was persecuted due to his sexual orientation, and was immediately detained upon arrival in the United States on or about October 20, 2024. In June 2025, an immigration judge denied his request for asylum, ordered him to be removed to Egypt, and also granted his petition for withholding of removal.

Since then, the Government[1] has notified Petitioner of an intent to remove him to Uganda, but after Petitioner claimed fear of persecution there, the Government referred him for a credible fear interview. Petitioner has not been informed that the Government will remove him to any other

---

[1] This order refers to the Federal Respondents—Attorney General of the United States Pamela Bondi, U.S. Department of Homeland Security Secretary Kristi Noem, U.S. Immigration and Customs Enforcement ("ICE"), ICE's Acting Seattle Field Office Director Laura Hermosillo—generally as "the Government."

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 1

country. As he has now been detained for more than six months, he seeks immediate release and requests that the Court enjoin his removal to a third country without due process. For the following reasons, the Court will grant the petition and grant in part Petitioner's request for related injunctive relief.

## I. BACKGROUND

Petitioner is a native and citizen of Egypt who entered the United States in October 2024 without being inspected, admitted, or paroled. Dkt. No. 10-1. He was processed for expedited removal. *Id*. He arrived in the Northwest Immigration Processing Center ("NWIPC") in Tacoma, Washington, on November 12, 2024. Dkt. No. 9 ¶ 5.

On June 16, 2025, an immigration judge held a hearing and ordered Petitioner removed to Egypt and simultaneously granted Petitioner's request for withholding of removal to Egypt. Dkt. No. 10-3. On September 5, 2025, Petitioner told a deportation officer at NWIPC that he does not have any country to go to. Dkt. No. 9 ¶ 7. Petitioner was served with a form instructing him to list countries that he believes would accept him. *Id*. The Government then served Petitioner with a notice of removal and intent to remove to Uganda. *Id*. Petitioner refused to sign the notice. *Id*.

On January 13, 2026, Petitioner filed a petition for writ of habeas corpus. Dkt. No. 1. After the Government learned of Petitioner's fear of persecution in Uganda via his habeas petition, Petitioner was referred to U.S. Citizenship and Immigration Services ("USCIS") for a credible fear interview. *Id*. ¶ 8.

The petition is now fully briefed and ripe for resolution. For the following reasons, the Court will grant the petition.

## II. ANALYSIS

### A. Legal Standards

#### 1. Habeas Jurisdiction

To succeed on a habeas petition, a petitioner must show he "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241. "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and … the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A district court's habeas jurisdiction includes challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

#### 2. Legal Framework Governing Detention of Non-Citizens Subject to an Order of Removal

Detention of noncitizens following an order of removal is governed by the INA. "When [a noncitizen] has been found to be unlawfully present in the United States and a final order of removal has been entered, the Government ordinarily secures the [noncitizen's] removal during a subsequent 90-day statutory 'removal period,' during which time the [noncitizen] normally is held in custody." *Zadvydas*, 533 U.S. at 682. During the 90-day removal period, the Government "shall detain" the noncitizen. 8 U.S.C. § 1231(a)(2)(A). Once the 90-day removal period ends, the Government may continue to detain certain noncitizens. *Id.* § 1231(a)(6). "[A noncitizen] ordered removed who is inadmissible …, removable[,] … or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period[.]" *Id.*

Federal regulations govern the re-detention and revocation of supervised release of a noncitizen with a final order of removal. 8 C.F.R. § 241.13(a). Under 8 C.F.R. § 241.13(i), ICE

may revoke a noncitizen's release if (1) if they violate the conditions of their release or (2) if, "on account of changed circumstances," ICE determines there is a significant likelihood the noncitizen will be removed in the reasonably foreseeable future.

However, the INA does not authorize "indefinite, perhaps permanent, detention" of noncitizens subject to final orders of removal. *Zadvydas*, 533 U.S. at 699. "A statute permitting indefinite detention of [a noncitizen] would raise a serious constitutional problem [under] … [t]he Fifth Amendment's Due Process Clause." *Id.* at 690. Thus, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699. The "presumptively reasonable" period for detention following a removal order is six months. *Id.* at 701.

In challenging detention through a habeas petition, the petitioner bears the initial burden of providing "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. Once that showing is made, the Government "must respond with evidence sufficient to rebut that showing." *Id.* If the Government fails to meet its burden, then the noncitizen must be released from detention. *See Jennings v. Rodriguez*, 583 U.S. 281, 299 (2018).

**B.    Petitioner's Continued Detention Is Unlawful.**

Petitioner is entitled to the protections of the Due Process Clause. *Zadvydas*, 533 U.S. at 693. Having been detained for more than six months, Petitioner's detention is not "presumptively reasonable." *Id.* at 701. Petitioner has met his burden to show that there is no significant likelihood of removal in the reasonably foreseeable future because he may not be removed to Egypt, and no third country has agreed to accept him. *See* Dkt. No. 9 ¶ 7 (a deportation officer's statement that "there is no update on the status of [Petitioner's] removal to a third country"). Although the Government apparently notified Petitioner of an intent to remove him to Uganda, there is no

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 4

evidence that Uganda (or any other country) is willing to accept Petitioner under 8 U.S.C. § 1231(b)(2)(E). Under these circumstances, Petitioner has satisfied his burden. *See, e.g., Elshourbagy v. Bondi*, No. 2:25-cv-02432-TL, 2025 WL 3718993, at *4 (W.D. Wash. Dec. 23, 2025).

The burden now shifts to the Government to respond with evidence sufficient to rebut Petitioner's showing. *Zadvydas*, 533 U.S. at 701. Here, the Government has made no effort in this regard. The Government's return simply does not address Petitioner's *Zadvydas* arguments, and focuses its return entirely on third-country removal. *See* Dkt. No. 8. Although a deportation officer states that Petitioner has been referred to USCIS for a credible fear interview (Dkt. No. 9 ¶ 8), a representation that good-faith efforts to effectuate removal continue is insufficient to rebut Petitioner's showing. *See Zadvydas*, 533 U.S. at 702.

Because Petitioner is entitled to habeas relief under *Zadvydas*, the Court will therefore grant his habeas petition.

**C.    The Court Will Grant in Part Petitioner's Requests for Injunctive Relief.**

As noted earlier in this order, Petitioner seeks not only his release from detention but also injunctive relief related to his potential removal to a third country under the Fifth Amendment to the United States Constitution, 8 U.S.C. § 1231, the Convention Against Torture, implementing regulations of the Immigration and Nationality Act, and the Administrative Procedure Act ("APA"). *See* Dkt. No. 1 at 14–18. The Government contends that because ICE is lawfully pursuing Petitioner's removal to third countries, Petitioner's request to limit ICE from doing so should be denied. Dkt. No. 8 at 9.

The Court will grant some of Petitioner's requested injunctive relief, after addressing its jurisdiction to hear Petitioner's claims.

1.  *Petitioner's Membership in the D.V.D. Class Does Not Deprive the Court of Jurisdiction.*

The Government argues that the Court "should decline to exercise jurisdiction over Petitioner's third country removal claim as a matter of comity" because he is a member of the certified plaintiff class in *D.V.D v. Department of Homeland Security*, Civ. A. No. 25-10676 (D. Mass.). Dkt. No. 8 at 11. For support, it relies on *Pride v. Correa*, in which the Ninth Circuit held that, when "the complainant is a member in a class action seeking the same relief[,]" a court "may dismiss those portions of the complaint which duplicate the class action's allegations and prayer for relief." 719 F.3d 1130, 1133 (9th Cir. 2013) (citation modified) (quoting *Crawford v. Bell*, 599 F.2d 890, 892–93 (9th Cir. 1979)). But the Ninth Circuit went on to explain that "a district court may not 'dismiss[] those allegations … which go beyond the allegations and relief prayed for in [the class action]." *Id.* (first and last alterations in original) (quoting *Crawford*, 599 F.2d at 893). Here, dismissal would be inappropriate because Petitioner's individual claims seek relief he is unable or unlikely to obtain in the *D.V.D.* litigation.

Petitioner's due process claim is not identical to the claims in the *D.V.D.* class action because he seeks a meaningful opportunity to seek withholding of removal in the event he fears persecution in a designated third country—a claim not at issue in *D.V.D. See Nguyen v. Scott*, 796 F. Supp. 3d 703, 729–30 (W.D. Wash. 2025); *see also Kumar v. Wamsley*, No. C25-2055-KKE, 2025 WL 3204724, at *7 (W.D. Wash. Nov. 17, 2025); *Arenado-Borges v. Bondi*, No. 2:25-cv-02193-JNW, 2025 WL 3687518, at *6 (W.D. Wash. Dec. 19, 2025).

And as the Government acknowledges, dismissal of individual claims that duplicate a class action is not required, rather, it is "within the court's discretion" and grounded in "its inherent power to control its own docket." Dkt. No. 8 at 11 (citing *Crawford*, 599 F.2d at 893). As the Ninth Circuit explained in *Crawford*, "[a] court *may choose* not to exercise its jurisdiction when

another court having jurisdiction over the same matter has entertained it and can achieve the same result." 599 F.2d at 893.  Here, ample authority supports the Court's exercise of jurisdiction over Petitioner's third-country removal claims.

Finally, the Government contends that Petitioner's petition should be dismissed because "[t]he Supreme Court's stay of the preliminary injunction" in *D.V.D.* is "precedent and … binding" on Petitioner as a member of the *D.V.D.* class. Dkt. No. 8 at 11.  For the reasons thoroughly explained in *Nguyen*, the Court disagrees.  *See* 796 F. Supp. 3d at 730–33; *see also Kumar*, 2025 WL 3204724, at *8 (adopting *Nguyen*'s reasoning); *Arenado-Borges*, 2025 WL 3687518, at *6 (same).

In sum, Petitioner's membership in the *D.V.D.* class does not deprive the Court of jurisdiction to adjudicate his claims for individual relief in this habeas action.

   *2.   The Court Need Not Determine Whether Review Solely Under the APA Is Available.*

The Government argues that although Petitioner references the APA as a legal basis for his challenge to removal to a third country, the APA does not apply because Petitioner has other adequate statutory remedies, namely habeas. Dkt. No. 8 at 9–10.  Federal courts have rejected this argument, finding that "APA and habeas review may coexist." *Bautista v. Santacruz*, __ F. Supp. 3d __, 2025 WL 3713987, at *14 (C.D. Cal. Dec. 18, 2025) (quoting *R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 185 (D.D.C. 2015)).

Moreover, this case is unlike *Trump v. J.G.G.*, which is cited by the Government, where petitioners' suit challenged removal solely under the APA, having dismissed habeas claims.  604 U.S. 670, 671, 674 (2025).  Here, Petitioner argues that his removal to a third country would violate not only the APA but also the Convention Against Torture and 8 U.S.C. § 1231. *See* Dkt. No. 1 at 15.  Accordingly, the Court agrees with Petitioner that it need not determine whether he would

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 7

be entitled to relief solely under the APA. *See* Dkt. No. 11 at 5 ("[E]ven if the Court agrees with the Respondents that the [APA] is not the proper vehicle through which to assert that notice is required before deportation to a third country, that does not negate the remaining reasons why notice is required.").

       3.      *The Court Will Grant Some of Petitioner's Requests for Injunctive Relief.*

Petitioner also seeks prospective injunctive relief adjacent to his habeas petition seeking protection in the event the Government attempts to remove him to a third country, or if the Government re-detains him. Dkt. No. 1 at 15–18. Specifically, he requests an order enjoining the Government from removing him to a third country without notice and a meaningful opportunity to respond, or from re-detaining him without first holding a hearing before a neutral decisionmaker. *Id.* at 18. He also requests an order enjoining the Government from removing him to *any* third country because their third-country removal policy seeks to impose unconstitutional punishment on its subjects, including imprisonment and other forms of harm. *Id*.

Because he invoked its habeas and federal question jurisdiction, the Court could provide equitable relief on those claims if Petitioner met the standard for a permanent injunction. *See* Dkt. No. 1 at 3; *see Roman v. Wolf*, 977 F.3d 935, 941–42 (9th Cir. 2020). Thus, the Court turns to consider the availability of the relief Petitioner requests.

          a.      <u>Respondents Must Comply With Federal Regulations if Petitioner is Re-Detained.</u>

Petitioner asserts that he is entitled to a hearing in advance of any future re-detention. Dkt. No. 1 at 18.

The re-detention of a noncitizen subject to a final order of removal is governed by 8 C.F.R. § 241.13. The regulation was "intended to 'provide due process protections to [noncitizens] following the removal period as they are considered for continued detention, release, and then

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 8

possible revocation of release[.]'" *Constantinovici v. Bondi*, --- F. Supp. 3d ---, 2025 WL 2898985, at *5 (S.D. Cal. Oct. 10, 2025) (quoting *Santamaria Orellana v. Baker*, CV 25-1788-TDC, 2025 WL 2444087, at *6 (D. Md. Aug. 25, 2025)). The regulation states, in part, that "[t]he Service may revoke [a noncitizen's] release under this section and return the [noncitizen] to custody if, on account of changed circumstances, the Service determines that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13. The regulation also provides that, "[u]pon revocation [of an order of supervision], the [noncitizen] will be notified of the reasons for revocation of his or her release," and that there will be "an initial informal interview promptly after his or her return to Service custody to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241.13(i)(3).

Here, the Government does not dispute that 8 C.F.R. § 241.13(i) would govern any future revocation of Petitioner's release, but argues that the Court should not prescribe any additional procedures at this time, when Petitioner's future release has not yet been revoked. Dkt. No. 8 at 14. Petitioner's traverse emphasizes that he does not request "a premature ruling on future conduct[,]" but seeks only to ensure that any release he receives from this Court is not immediately thwarted by an unconstitutional re-detention. Dkt. No. 11 at 6–7. The Court agrees with Petitioner that it is appropriate to order at this time that if Petitioner is re-detained after he is released consistent with this order, the Government must provide notice and an opportunity to respond that comports with 8 C.F.R. § 241.13(i).

        b.    <u>The Government Must Comply With the Law In Seeking Petitioner's Removal to a Third Country.</u>

Petitioner also requests an order enjoining the Government from removing him to a third country without notice and a meaningful opportunity to be heard in reopened removal proceedings,

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 9

and the Government does not explicitly oppose this request. The Court will grant Petitioner's request.

Where the Government cannot remove a noncitizen to the country specified in their removal order, it may attempt to remove that person to a third country, but in doing so, it must comply both with the INA, 8 U.S.C. § 1231(b), and the Due Process Clause. *Aden v. Nielsen*, 409 F. Supp. 3d 998, 1019 (W.D. Wash. 2019); *Kumar*, 2025 WL 3204724, at *2 (explaining such designations "are subject to the same mandatory protections that exist in removal proceedings."). To comply with due process, the Government must provide sufficient notice and a meaningful opportunity for the noncitizen to present any claim of fear of persecution or harm upon removal to a designated third country. *Id.* The INA prohibits ICE from removing a noncitizen to any country where their "life or freedom would be threatened … because of [their] race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). The Government must "make a determination regarding a noncitizen's claim of fear before deporting him." *Aden*, 409 F. Supp. 3d at 1010; 8 U.S.C. § 1231(b)(3)(A). Multiple courts in this district have held that, if a noncitizen claims fear of removal to a designated third country, the Government must allow them to pursue withholding of removal through reopened removal proceedings before an immigration judge. *Nguyen*, 796 F. Supp. 3d at 739; *Aden*, 409 F. Supp. 3d at 1011; *Baltodano v. Bondi*, No. C25-1958RSL, 2025 WL 2987766, at *3–4 (W.D. Wash. Oct. 23, 2025).

Consistent with *Aden*, the Court will grant Petitioner's request requiring that the Government may not remove or seek to remove Petitioner without notice of their intent to do so and a meaningful opportunity to respond in reopened removal proceedings before an immigration judge under 8 U.S.C. § 1231(b)(3). *Nguyen,* 796 F. Supp. 3d at 727 ("'[B]oth the due process clause and the governing statute place the burden on the government—regardless of whether the country of deportation is designated during or after the removal hearing—to provide a meaningful

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 10

opportunity to be heard on asylum and withholding claims.' This cannot be satisfied by simply allowing the noncitizen to file a motion to reopen their removal proceedings; rather, the removal proceedings must be reopened so that a hearing can be held.") (quoting *Aden*, 409 F.Supp.3d at 1010–1011)).

        c.      <u>The Court Denies Petitioner's Request For an Order Enjoining Removal to Any Third Country.</u>

Petitioner argues that ICE's third-country removal policy is unconstitutionally punitive because it violates his Fifth and Eighth Amendment rights, and he seeks to enjoin the Government from removing him to any third country on that basis. Dkt. No. 1 at 18.

As a threshold matter, numerous courts, including this one, have held the Government's third-country removal policy is unconstitutional. *See, e.g.*, *Kumar*, 2025 WL 3204724, at *6; *Nguyen*, 796 F. Supp. 3d at 735 (collecting cases). The Government does not address this growing body of legal authority nor does it dispute the underlying factual allegations supporting it. Instead, the Government argues only that this relief duplicates Petitioner's request that the Court order the Government to comply with due process in future efforts to effectuate Petitioner's removal to a third country. Dkt. No. 8 at 12.

Although the Court stands by its prior conclusion (unrebutted here) that the Government's third-country removal policy violates due process, it nonetheless denies Petitioner's request for a broad injunction against any third-country removal because, on this record, Petitioner has not demonstrated a likelihood of irreparable injury that would entitle him to permanent injunctive relief in the form of the order requested. *See eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006) (discussing standard for permanent injunctive relief); *cf. Kumar*, 2025 WL 3204724, at *9 (enjoining third-country removal where petitioner was issued a notice that ICE intended to remove him to a third country where he would likely face persecution). Petitioner's traverse clarifies that

he requests only "the assurance that he will not be swooped up and sent to whatever country will accept him without first having the opportunity to argue against such action." Dkt. No. 11 at 11. As explained in the prior section, the Court will require the Government to provide him with such an opportunity. Accordingly, on this record, the Court need not further consider Petitioner's request for duplicative relief.

### III.  CONCLUSION

The Court GRANTS Petitioner's habeas petition. Dkt. No. 1.

1. The Government is ORDERED to immediately release Petitioner from custody and any future re-detention must comply with 8 C.F.R. § 241.13(i).

2. The Court further ORDERS that if the Government continues to pursue removal of Petitioner to a third country, they must provide him with written notice of their intent to do so and a meaningful opportunity to respond in reopened removal proceedings before an immigration judge under 8 U.S.C. § 1231(b)(3).

3. No later than February 4, 2026, the Government shall file a declaration confirming that Petitioner has been released from custody.

Dated this 2nd day of February, 2026.

Kymberly K. Evanson
United States District Judge